MICHAEL A. LAURENSON (SBN: 190023)
ANNETTE L. ROSE (SBN: 311274)
GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054
mlaurenson@grsm.com
arose@grsm.com

Attorneys for Defendant
VECTRA AI, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA—SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL E. STERN, <br><br> Plaintiff, <br><br> vs. <br><br> VECTRA AI, INC., <br><br> Defendant. | Case No. 5:23-cv-01522-SVK <br><br> **DEFENDANT VECTRA AI, INC.'S OPPOSITION TO PLAINTIFF'S *MOTION IN LIMINE* NO. 2** <br><br> **Date:** October 3, 2024 <br> **Time:** 9:30 a.m. <br> **Courtroom:** 6 <br><br> Complaint Filed: March 30, 2023 <br> Trial Date: October 21, 2024 |

## I.     INTRODUCTION

After stripping away Plaintiff Michael Stern's rhetoric, misplaced patriotism, and hyperbole, the facts at the heart of this case turn on Defendant Vectra AI, Inc.'s ("Vectra") reason, *i.e.*, intent or motive, for Stern's separation from the company. In order to prove that Vectra did not terminate Stern due to unlawful retaliation as alleged, and to rebut his contention that Vectra had a retaliatory motive when the company terminated his employment, Vectra will introduce testimony from its current and former employees Aaron Bean, Bonnie Simmons, Anastasiya Farr, Randy Schirman, Michael Wilson, and Marty Sanders about Stern's improper conduct, which formed the non-retaliatory motive for Vectra to terminate Stern's employment. Vectra does not seek to introduce testimony from these witnesses for the truth of the matter asserted, *i.e.*, to prove that Stern actually engaged in such conduct. Rather, Vectra intends to introduce this evidence to establish the motive for the company's decision to

-1-

terminate Stern through the declarants' then-existing intended motives for the contested separation. Such testimony is not hearsay. Notably, much of the testimony from Bonnie Simmons, Anastasiya Farr, Marty Sanders, and Michael Wilson arise from Stern's own statements, which are also party admissions.

Such testimony does not seek to circumnavigate Vectra's withdrawn "after acquired evidence" affirmative defense because the evidence relates to the declarant's state of mind *before* Vectra terminated Stern's employment. By definition, it cannot relate to Vectra's "after acquired evidence" affirmative defense. Because Vectra does not seek to introduce testimony from Aaron Bean, Bonnie Simmons, Anastasiya Farr, Randy Schirman, Michael Wilson, and Marty Sanders as improper hearsay, but rather non-hearsay statements, the Court should deny Plaintiff's *motion in limine* no. 2.

## II.   ANALYSIS

### A.   The proffered testimony is relevant to Vectra's intention in Stern's termination.

Evidence is relevant if it "has *any tendency* to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." (FRE, Rule 401(a)-(b) [emphasis added].)

In this case, Vectra will proffer evidence that the company's motivations for terminating Stern's employment were wholly unrelated to his allegedly complaints about the National Cyber Range test. Rather, Vectra will proffer evidence that the company terminated Stern's employment because of reports of improper conduct to Human Resources, which, after being corroborated, informed Vectra's ultimate decision and motive by the company's Chief Executive Officer, Hitesh Sheth, for Stern's termination. The testimony from witnesses Aaron Bean, Bonnie Simmons, Anastasiya Farr, Randy Schirman, Michael Wilson, and Marty Sanders is being offered to make a fact (Vectra's lawful intent in terminating Stern) more or less probable than it would be without the evidence.

This is not a "game of telephone" as Stern contends; rather, evidence of Vectra's intent and investigation into Stern's conduct leading up to his termination, which makes the fact of lawful termination more probable than it would be without the evidence. Further, Vectra's

1  ultimate intent, as put into action by and through its agents, determines whether or not the
2  company unlawfully terminate Stern's employment as alleged. Thus, the testimony from
3  Aaron Bean, Bonnie Simmons, Anastasiya Farr, Randy Schirman, Michael Wilson, and Marty
4  Sanders are all relevant to establish Vectra's non-retaliatory reason for terminating Stern's
5  employment.

6  **B.     The declarant's testimony is not inadmissible hearsay.**

7  Under the FRE, hearsay is defined as a "statement" that "(1) the declarant does not
8  make while testifying at the current trial or hearing, and (2) a party offers in evidence to prove
9  the truth of the matter asserted in the statement." (FRE, Rule 801(c).) Similarly, statements
10 that are not hearsay are out-of-court statements offered against an opposing party and that was
11 made by the party in an individual capacity, *i.e.*, party admissions. (FRE, Rule 801(c).)

12 In this case, Vectra does not seek to introduce testimony from Aaron Bean, Bonnie
13 Simmons, Anastasiya Farr, Randy Schirman, Michael Wilson, or Marty Sanders regarding
14 Stern's improper conduct for the truth of the matter asserted. Rather, the evidence is being
15 proffered to establish Vectra's intention or motive in terminating Stern's employment and
16 Vectra's various employees' then-existing intentions of how they were going to investigate
17 Stern's reported conduct.

18 For example, Anastasiya Farr will testify that Stern scared her when he berated her at a
19 networking event, which informed her decision to report Stern to her supervisor, Bonnie
20 Simmons. Bonnie Simmons will testify that Stern made her uncomfortable when he messaged
21 her at improper times of day or messaged her about apparent improper business opportunities,
22 which informed her decision to report Stern to her supervisor, Randy Schirman, after Farr
23 reported her exchange with Stern. Randy Schirman will testify that he felt concerned when his
24 (female) subordinate Simmons brought her concerns to him about Stern, which informed his
25 then-existing intention to report Stern to Mary Sanders (Stern's supervisor). Sanders will
26 testify that he previously spoke with Stern about his conduct based on complaints from
27 Michael Wilson and therefore also felt concern, which informed his then-existing decision to
28 report Stern to Vectra's Human Resources Director, Aaron Bean. Aaron Bean will testify that

-3-

upon hearing Sanders' complaints about Stern, he felt concerned about Stern's workplace conduct and decided to corroborate the complaint with Schirman, which Schirman did corroborate, which then informed Bean's motive in moving forward with disciplinary action, *i.e.*, termination against Stern. Bean then felt Stern's conduct rose to the level of termination, which informed his decision to recommend Stern's termination to Vectra's CEO, Hitesh Sheth.

To the extent that Bonnie Simmons or Anastasiya Farr testify about statements that Stern made to them, such statements are non-hearsay party admissions. To the extent that the proffered witnesses' testimony addresses Stern's improper conduct, such testimony is not being offered for the truth of the matter asserted, *i.e.*, that Stern engaged in such conduct, but rather, the declarants' *intentions* and non-retaliatory intent or purpose for reporting Stern up the chain of command. Such evidence is directly relevant to Vectra's defense of this matter that the company, by and through its primary decision makers Aaron Bean and Hitesh Sheth, did not have any retaliatory animus when recommending and ultimately terminating Stern's employment, respectively. In sum, the proffered witnesses' testimony is admissible as non-hearsay statements.

C.     **Plaintiff will not be *unfairly* prejudiced if the disputed testimony is admitted.**

The proffered testimony is certainly prejudicial to Stern, but there is nothing unfair about it because Stern is aware of all the evidence and its probative values outweighs any potential for unfair prejudice.

All of the witnesses testified at deposition to the behavior by Stern which will be offered and all have testified that they were aware of and complained about this behavior prior to Stern's termination. This has nothing to do with after-acquired evidence.

Second, there is nothing in the proffered evidence that could possibly "mislead the jury." The jury is tasked with deciding whether Vectra's proffered reason for terminating Stern's employment was retaliatory based on his "complaint" following the NCR testing. In order to evaluate such claims, the jury must evaluate evidence from Vectra's employees and supervisors who ultimately informed Bean's plan or motive in terminating Stern's

employment.

If anything, exclusion of this evidence will confuse the jury because there would be substantial missing pieces of relevant evidence not presented to the jury to inform their decision. It would Vectra who would be unfairly prejudiced if this evidence were excluded, as it would be unable to defend itself against the allegation of retaliatory motive by introducing plainly substantial evidence of a contrary motive.

### III.   CONCLUSION

Vectra does not seek to introduce improper hearsay from witnesses Aaron Bean, Bonnie Simmons, Anastasiya Farr, Randy Schirman, Michael Wilson, or Marty Sanders. The proffered witnesses' testimony is not being offered for the truth of the matter asserted of whether or not Stern engaged in improper workplace conduct. Rather, the proffered witnesses' testimony is being offered to establish their state of mind and motives for complaining about and deciding to terminate Stern. Accordingly, because the proffered witnesses' testimony is properly admitted, Vectra requests that the Court deny Stern's *motion in limine no. 2*.

Dated: September 26, 2024        GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Annette L. Rose*
   Michael A. Laurenson
   Annette L. Rose
   Attorneys for Defendant
   VECTRA AI, INC.