MICHAEL A. LAURENSON (SBN: 190023)
ANNETTE L. ROSE (SBN: 311274)
GORDON REES SCULLY MANSUKHANI, LLP
315 Pacific Avenue
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054
mlaurenson@grsm.com
arose@grsm.com

MELINDA RIECHERT (SBN: 65504)
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025-1015
Telephone: (650) 614 7400
Facsimile: (650) 614 7401
mriechert@orrick.com

Attorneys for Defendant
VECTRA AI, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA—SAN JOSE DIVISION**

| | |
|---|---|
| MICHAEL E. STERN,<br><br>           Plaintiff,<br><br>    vs.<br><br>VECTRA AI, INC.,<br><br>           Defendant. | Case No. 5:23-cv-01522-SVK<br><br>**DEFENDANT VECTRA AI, INC.'S OPPOSITION TO PLAITIFF'S SECOND MOTION IN LIMINE, DKT. 154**<br><br>**Pre-Trial Conference**<br>Date: January 23, 2025<br>Time: 10:00 a.m.<br>Dept.: Courtroom 6<br><br>Complaint Filed: March 30, 2023<br>Retrial Date: January 27, 2025 |

**I.     Introduction**

Plaintiff Michael Stern's ("Stern") "second"[1] *motion in limine* to exclude Vectra's Exhibit No. 203 (Q3 '21 PowerPoint") and as addressed in Vectra's opposition to Stern's "Motion to Suppress Unproduced Documents and for Sanctions," should be denied. Contrary to the statements in Plaintiff's motion, Vectra did not "hide" the document during discovery.

---

[1] On September 19, 2024, Stern filed his first two *motions in limine*. On December 17, 2024, Stern filed a "Motion to Suppress Unproduced Documents and for Sanctions," which the Court advised it intends to evaluate as one of Stern's five *in limine* motions. (Dkt. 144.) On January 9, 2025, Stern filed Motions in Limine Nos. 1 and 2. (Dkt Nos.: 153, 154.)

1. Rather, Exhibit 203 fell outside the "search terms" for the electronically stored information ("ESI") that the Parties had agreed during the discovery phase of the litigation. Further, Exhibit 203 never fell within the scope of any of Stern's demanded discovery production; thus, Vectra had not identified the document as responsive to Stern's demanded discovery. Vectra discovered Exhibit 203 during the course of the first trial and produced it following the mistrial. Exhibit 203 is also a key document since it corroborates Vectra's defense and refutes Plaintiff's claim that the numbers provided to him by Brian Davis during his interview were false. The numbers in the PowerPoint are consistent with the information that Davis provided to Stern and come from the same source, the Salesforce records. Since the actual salesforce records shown to Stern during the interview cannot be duplicated, this document is the best evidence that the information provided to Stern during the interview process was the same information shown to Stern and corroborates that the information shown to Stern during the interview was the information available to Davis and Stern at the time. Sanders will authenticate the document and explain what it means. The document is not hearsay, since it comes in to show the state of mind of Sanders and Davis when they showed the Salesforce numbers to Stern during the interview. It is admissible to show they were not lying when they communicated the Salesforce numbers to Stern during the interview, a key issue in Plaintiff's fraudulent inducement claim, and is thus relevant evidence.

With regard to the fact witnesses Landen Brown and Tim Wade, Vectra did not learn that these witnesses would need to testify until the first trial. During the first trial, Vectra sought to introduce a text message exchange between Landen Brown and Michael Wilson related to Brown's complaints to Michael Wilson about Stern's conduct. (Dkt. 70, Exh. 200.) Brown's disclosure to Michael Wilson informed and would have corroborate Michael Wilson's later complaint to Stern's supervisor, Marty Sanders, which ultimately became one of the catalysts for Vectra's determination to end Stern's employment. Stern objected to admission of Defendant's previously marked Exhibit 200 and the Court sustained Stern's objection because Landen Brown was not available to authenticate the message. Vectra now seeks to have Brown testify directly from his personal knowledge about his complaints to

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

Vectra, which is directly relevant to Vectra's non-retaliatory reason for Stern's termination.

Similarly, Vectra learned for the first time during the first trial that Stern, and his key supporting witness, Steve Hill, now claims that the National Cyber Range ("NCR") test results frustrated their ability to sell Vectra product to the Army. Going into the first trial, Vectra relied on Stern's deposition testimony that he did not change anything about his sales tactics after Vectra received and evaluated the NCR test results. Tim Wade will testify about his interactions with Stern related to the NCR test results, their army briefing, and the fact that neither Hill nor Stern ever mentioned the NCR report when marketing Vectra to the Army. Vectra did not identify this witness previously because Vectra only learned of these novel contentions during the trial.

The Court should permit Vectra to identify Landen Brown and Tim Wade and its proposed exhibits, including Exhibit. 203, for retrial because Vectra had substantial justification in how it produced the disputed document and identified the fact witnesses that are the subject of this Motion. Importantly, there is no harm to Stern as he has personal knowledge as to the testimony from Landen Brown and Tim Wade from his direct interactions with these witnesses. The PowerPoint in Exhibit 203 is derived from the Salesforce figures that Stern testified Brian Davis showed to him during his recruiting process. This document will *help* the jury evaluate Stern's claim by providing independent evidence about the events giving rise to this litigation, which was a "missing" piece of evidence during the first trial.

## II. Relevant Facts

### A. Relevant Discovery and Pretrial Background that Informed Vectra's Disclosure of Exhibit 203 and Landen Brown.

Vectra incorporates by reference the facts related to the Parties' discovery meet and confer efforts that are set forth in the Vectra's opposition to Stern's Motion to Suppress. (See Dkt. Nos. 139, 141, 141-1.) During the discovery phase of this litigation, the Parties primarily focused on narrowing and honing "search terms" related to the electronic discovery documents in order to enable Vectra to reasonably respond to Stern's extensive production of document demands. (Dkt. 141, 141-1; see also Declaration of Annette Rose ["Rose Dec."] at ¶4.) The

1  Parties, by and through robust, good faith meet and confer efforts, narrowed a voluminous
2  number of documents on the ESI platform that inevitably precluded all "responsive"
3  documents from being produced. (*Ibid.*)  Beyond the disputed documents falling outside the
4  ESI search term parameters, Exhibit 203 was not responsive to Stern's two production
5  requests; thus, Vectra did not identify the document when it was gathering records responsive
6  to some of the additional non-ESI demands. (Rose Dec. at ¶ 5; Exh. 1-2.)

7  Additionally, during the Parties' pretrial conference, Vectra sought to include "Exhibit
8  200," which consisted of a text message exchange between Michael Wilson and Landen
9  Brown regarding Stern's workplace conduct. (See Rose Dec. at ¶ 6; Exh. 3.)  Vectra intended
10 to admit this text message, by and through identified witness, Michael Wilson, to evidence the
11 company's non-retaliatory reason for Stern's termination. (Rose Dec. at ¶ 6.)  However, the
12 Court granted Stern's objection and excluded this proffered document, finding that Vectra's
13 proffer on the document's authentication was insufficient. (Rose Dec. at ¶ 6; see also Dkt. 70,
14 pg. 33.)  In light of the Court's prior ruling and concerns about authenticity of the evidence,
15 Vectra determined that it would need to call Landen Brown to testify from his personal
16 knowledge about his complaints to Vectra to satisfy the Court's concerns.

17 **B.   Relevant Testimony Pertaining to Vectra's Identification of Tim Wade and further Salesforce pipeline documents.**
18

19 During Stern's deposition, he testified that he did not change anything about his sales
20 tactics after receiving the NCR test report. (Rose Dec. at ¶ 7; Exh. 4 [Deposition of Michael
21 Stern at pp.: 155:15-156:3.)  However, notwithstanding Stern's testimony at his deposition,
22 Steve Hill testified that he and Stern could not recommend the Vectra product to Army entities
23 because of the NCR test. (TT, vol. 2, at pp.: 206:1-12.)  Hill further implied in his testimony
24 that the Army did not move forward with purchasing Vectra because of the NCR test. (*Ibid.*)
25 Stern also implied that his deals with the Army or federal government defense organizations
26 did not materialize because of the NCR test results. (TT at pp. 302:1-10.)
27 Stern and Hill also testified at trial that Brian Davis had shown them various pipeline
28 opportunities in Salesforce. (Trial Transcript ["TT"], vol. 2, pp.: 173:14-25.)  Stern also denies

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

1  that the additional materials, such as sales projections from Parees Ganbari, that Vectra
2  provided him were accurate reflections of the pipeline and that the Salesforce data was the
3  most accurate data. (TT, vol. 3, pp.: 421:25-422:9.) Vectra witness, Marty Sanders, will testify
4  that the sales and pipeline information that is contained within Exhibit 203 was derived from
5  the same Salesforce information that Stern and Steve Hill will testify that Brian Davis showed
6  them during their recruitment process.

**III.    Analysis**

**A.    Vectra's Disclosure of the Disputed Evidence was Substantially Justified and therefore the Court should allow Vectra to present this evidence.**

The Court should permit Vectra to identify, and seek to introduce, documents and witnesses that were not identified in Vectra's discovery disclosures because Vectra's failure to disclose the documents and witnesses was substantially justified. (FRCP, Rule 37(c)(1).)  For example, Vectra's failure to identify Exhibit 203 was the result of the document falling outside of the Parties' agreed upon search parameters.  Further, although Vectra was also conducting non-ESI searches for other various documents requested by Stern, the disputed PowerPoint presentation that is reflected in Exhibit 203 was not responsive to Stern's production demands, at least none that were reasonably particularized in which Vectra could identify the documents. In other words, Vectra failed to identify the document and produce the document because it was not a document that the Parties were looking for.

Importantly, the disputed document would <u>help the jury</u> evaluate Stern's claims of fraudulent inducement or negligent misrepresentation.  Among the "missing" pieces of information at the first trial was Brian Davis' testimony and documents related to alleged "missing Salesforce records."  However, Vectra established at trial, the company did produce all requested Salesforce records.  Regardless, the Salesforce records that Brian Davis allegedly showed Stern can no longer be recreated based on the capabilities of the program. Vectra proffers Exhibit 203 because the sales figures and estimates in the PowerPoint were derived from the Salesforce data.  Thus, Exhibit 203 reflects a contemporaneous document to help the jury evaluate the missing information.  Vectra's witness, Marty Sanders, will be able to

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111

authenticate the document and explain its relevant sections to the jury, which will help them understand the information that Vectra was sharing with Stern during his onboarding. Further, Stern does not contest these facts, as Stern and Steve Hill testified that Brian Davis showed them various Salesforce figures during their onboarding.

As to identification of Tim Wade and Landen Brown, Vectra's intent to call these witnesses is also substantially justified. As to Landen Brown, Vectra did not assess that it needed to call Landen Brown – an out of state, former employee – when its current employee, Michael Wilson, was available to testify about complaints that he received and authenticate his text messages. However, in light of the Court's ruling sustaining Stern's objection to the proffered text message, previously identified defense Exhibit 200, Vectra only learned that it needed to identify Landen Brown during the first trial. Brown would be able testify from his personal knowledge about his conversations with Stern and his complaints about Stern's conduct, which were the catalyst to Vectra's ultimate decision to terminate Stern for his improper workplace conduct. Thus, the timeliness of this disclosure was substantially justified in light of the procedural posture of this case.

Finally, as to Tim Wade, Vectra was unaware, until the first trial, that Stern's case-in-chief would be putting forth contentions that the NCR testing affected his or his team's ability to sell Vectra product to the Army. Vectra's position was substantially justified because Stern testified at his deposition that he did not change any of his sales tactics, including his sales tactics to the Army, upon receipt of the NCR test; thus, Vectra did not have any basis in which to designate a rebuttal. Tim Wade was involved in Stern's Army briefing, attended Army briefings with Stern, and will testify that Stern did not disclose to the Army or otherwise disclose that he could not sell Vectra to the Army because of the NCR report. Vectra reasonably did not know that it had to identify this witness until the first trial because Stern took a novel position during the first trial.

**B.   Vectra's Disclosure of the Disputed Evidence does not cause harm to Stern and therefore the Court should allow Vectra to present this evidence.**

Finally, there is no harm to Stern in allowing Vectra to proffer this evidence to the jury.

-6-

Defendant Vectra AI, Inc.'s Opposition to Plaintiff's Second Motion in Limine, Dkt. 154
Case No. 5:23-cv-01522-SVK

As to Exhibit 203, Stern and Steve Hill both testified that Brian Davis showed them Salesforce data of the then-existing pipeline. Stern's attorneys had the opportunity to depose Stern, Steve Hill, Brian Davis, and Marty Sanders about the pipeline in Salesforce. Marty Sanders will testify that the sales figures in the PowerPoint contained in Exhibit 203 were derived from the Salesforce figures that Stern and Steve Hill testified during the first trial.

Similarly, Stern has personal, firsthand knowledge of any testimony from Landen Brown or Tim Wade as the testimony that they intend to offer is comprised of Stern's party admissions or Wade's personal experience with Stern in Army briefings and related engagements. Stern substantially changed his testimony from his deposition to trial testimony and Vectra should be permitted to identify witnesses to offer counter evidence for the jury's consideration.

### Conclusion

This Court should deny Stern's *Motion in Limine* No. 2 and allow Vectra to proffer Exhibit 203, presuming the appropriate foundation has been laid. Further, Vectra anticipates that the testimony from Landen Brown and Tim Wade will be short, concise and aid the jury in fully understanding the issues before them to decide. There is no harm to Stern is allowing this evidence to be presented to the jury and would assist the trier of fact in determining the ultimate issues in this case.

Dated: January 16, 2025        GORDON REES SCULLY MANSUKHANI, LLP

By: */s/ Annette L. Rose*
    Michael A. Laurenson
    Annette L. Rose
    Attorneys for Defendant
    VECTRA AI, INC.

Gordon Rees Scully Mansukhani, LLP
315 Pacific Avenue
San Francisco, CA 94111